UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DENNIS GEORGE RATHFON, SR.,

                Plaintiff,                               Case No.  1:15-cv-466

v.

                                                 HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant,

_____/

**OPINION**

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Dennis Rathfon seeks review of the Commissioner's decision denying his claim for disability insurance benefits under Title II of the Social Security Act.[1]

**STANDARD OF REVIEW**

      The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See*

_____

[1]It appears Plaintiff also filed an application for supplemental security income under Title XVI of the Act.  (PageID.310–13.)  As Plaintiff notes, while the record contains a final decision of the Commissioner regarding Plaintiff's Title II application, the record does not contain a final decision by the Commissioner for Plaintiff's Title XVI application.  (PageID.774.)  The Court has jurisdiction over only final decisions by the Commissioner.  *See* 42 U.S.C. § 405(g).  Accordingly, the only application at issue before the Court is Plaintiff's Title II application.

*Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 57 years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.40, 64.)  He successfully completed high school and was previously employed as a tractor-trailer truck driver and a material handler. (PageID.67, 92.) Plaintiff applied for benefits

on August 16, 2010, alleging that he had been disabled since January 8, 2010, due to a low back injury, depression, type two diabetes, high blood pressure, Posner-Schlossman syndrome, glaucoma, lens implants in both eyes, and an inactive thyroid. (PageID.301–09, 342.) Plaintiff's application was denied on March 31, 2011, after which time he requested a hearing before an ALJ. (PageID.180–87.) On February 2, 2012, Plaintiff appeared before ALJ Paul Jones for an administrative hearing. (PageID.60–99.) After the hearing, ALJ Jones rendered his written decision that Plaintiff was not disabled. (PageID.157–72.) Plaintiff appealed ALJ Jones' decision to the Social Security Appeals Council, which subsequently remanded the case on June 27, 2013, for further factual findings. (PageID.173–76.) ALJ Jones held a second administrative hearing on January 3, 2014, with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.100–51.) In a written decision dated January 24, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.40–59.) On March 9, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.28–32.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on June 30, 2010. (PageID.43.) Accordingly, to be eligible for Title II benefits, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

3

**ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*

---

[2]1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

4

ALJ Jones determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from January 8, 2010, his alleged onset date, through January 8, 2010, his date last insured. (PageID.45.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease, lumbar and cervical spine; (2) lumbar annular tears; (3) status post lumbar laminectomy; (4) shoulder arthritis; (5) headaches; (6) diabetes; (7) high blood pressure; and (8) obesity. (PageID.45.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.40.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b), except he can never climb ladders, ropes, or scaffolds; occasionally stoop, climb ramps and stairs; frequently balance, kneel, crouch, and crawl; avoiding moderate exposure to hazards such as the operational control of moving machinery and unprotected heights.

(PageID.49.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.51.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 499,000 jobs in the national economy in the positions of small products assembler, housekeeping cleaner, and information clerk that an individual similar to Plaintiff could perform. (PageID.120–21.) The VE further testified that there existed over 1,000 jobs in each position in the state of Michigan. (PageID.143.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274

(6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from January 7, 2010, (the alleged onset date), through June 30, 2010, (the date last insured). (PageID.53.)

## DISCUSSION

Plaintiff alleges the ALJ's decision is unsupported by substantial evidence for the following reasons.

1.  In determining RFC, the ALJ failed to give appropriate weight to the opinions of the treating physicians about their patient's reduced capabilities for the demands of work, or to give "good reasons" for rejecting those opinions.

2.  The decision does not address the effects of all Mr. Rathfon's impairments on his ability to work, either alone or in combination.  In particular, the limiting effects, or the lack thereof, of the neck, shoulder, and diabetic neuropathy impairments were not mentioned.

3,  The ALJ's assessment of the Plaintiff's alleged symptoms and limitations is not supported by substantial evidence or proper application of the regulatory analysis, but rather, appears to rely on his own personal standard of severity . . . which is an abuse of discretion and contrary to Social Security law and policy.

(PageID.775.)  The Court will discuss the issues below.

## 1.

Plaintiff first claims the ALJ erred in considering several opinions in the record.  He argues the ALJ was required to give controlling weight to the opinions of his treating physicians, Dr. James Miller and Dr. S.E. Newman, and failed to provide "good reasons" for giving the opinions less weight.  (PageID.782–84.)  Even if the ALJ provided "good reasons," Plaintiff claims, the ALJ failed to address the requisite factors in determining what weight should then be given to the

opinions. (PageID.782.) Finally, Plaintiff argues the ALJ erred by failing to assign more weight to the opinions of Dr. Miller and Dr. Newman, than to the medical consultant who did not examine Plaintiff. (PageID.785–86.) The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

The deference accorded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and

the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Furthermore, if the ALJ gives less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

A.   *Dr. Miller*

There are several medical opinions in the record from Dr. Miller. The earliest, assessment, dating July 31, 2010, concluded Plaintiff was unable to sit, stand, or walk, and could not lift ten pounds, perform fine manipulation, climb, squat, crawl, kneel, or bend.[3] (PageID.552.)

---

[3] The parties dispute whether Dr. Miller co-signed this check-box assessment dated 7/31/2010. It appears undisputed that it was primarily completed by Tami Starner, a certified nurse practitioner. (PageID.552.) There are two scribbles on the signature line, but they are entirely illegible and thus the Court is unable to discern whether the document was in fact co-signed by Dr. Miller. Even if Plaintiff is correct that Dr. Miller did sign the assessment, however, the Court finds the ALJ did not err because he provided good reasons for discounting the opinion.

On August 12, 2010, Dr. Miller further opined Plaintiff had reduced extension and flexion, as well as reduced motor strength.  Dr. Miller also provided similar restrictions as those he imposed a month earlier: Plaintiff could not lift over ten pounds, and could not reach, push, pull, bend, climb or twist. (PageID.553.)  After Plaintiff had back surgery, Dr. Miller opined Plaintiff could return to work, but with the same restrictions.  (PageID.583.)

The ALJ gave "limited weight" to the opinions, and the Court finds the ALJ has provided good reasons for doing so.  The ALJ noted, for example, that a contemporaneous treatment note for Dr. Miller's July 31, 2010, opinion noted that the postural limitations were "per patient," indicating that the opinion was merely a recitation of Plaintiff's subjective statements. (PageID.550.) The ALJ further noted that the opinions were inconsistent with other treatment notes that showed Plaintiff presented with a normal gait and had good neurological functions. (PageID.51.)  This conclusion is well supported.  For example, a January 25, 2010, treatment note from Dr. Miller shows Plaintiff had a "normal activity and energy level" and Plaintiff had a normal gait.  (PageID.508–09.)  On February 4, 2010, Plaintiff was noted to have a moderately reduced range of motion and reduced strength, but was counseled to regularly exercise for at least thirty minutes, three to four times a week–an inconsistent recommendation given the extreme limitations Dr. Miller would later advise.  (PageID.513.)  On April 14, 2010, Plaintiff had no muscle or joint pain or weakness.  There was no restriction of motion, atrophy, or backache.  (PageID.524.) Plaintiff again had a normal gait.  (PageID.524.)  The ALJ correctly noted these treatment notes from Dr. Miller and his nurse practitioner were inconsistent with the extreme limitations Dr. Miller would later determine applied to Plaintiff.   The Sixth Circuit has consistently held that inconsistencies between proffered restrictions and the underlying treatment records are good reasons

for discounting a treating source's opinions. *See e.g., Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 549–50 (6th Cir. 2014); *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 75–76 (6th Cir. 2012). Accordingly, the ALJ provided "good reasons," supported by substantial evidence for giving less than controlling weight to Dr. Miller's opinions.  Plaintiff's argument regarding Dr. Miller is rejected.

> B.    Dr. Newman

On December 13, 2010, Dr. S.E. Newman examined Plaintiff for the first time. (PageID.591.)  After performing a physical evaluation, Dr. Newman assessed Plaintiff as follows:

> The patient is unable to sit greater than 15 minutes, stand or walk greater than 20 minutes without  constant shifting about, sitting or standing at will.  He is unable to lift greater than 10 pounds for more than a couple of minutes without rest, and notes an increase in the lower back pain with any greater weights.  He is unable to reach over shoulder level secondary to the pain along the base of the neck extending into the shoulder girdles, as well as remaining restricted in nonrepetitive pushing or pulling.  He has complaints related to grasping and gripping activities as reflected by the Jamar Hydraulic Gripometer study.  He is not limited specifically in fine manipulation activities.  He is unable to climb steps greater than two to three at a time.  He avoids climbing, squatting, crawling or kneeling, bending or the like; has noted increased symptomatology related to temperature/humidity changes relative to the neck and lower back area.  He is intolerant of stress.  He should avoid being around moving equipment or machinery, or working at unprotected heights secondary to the lack of alacrity.

(PageID.595.)  Like the opinion of Dr. Miller, the ALJ assigned this opinion limited weight. (PageID.51.) Unlike Dr. Miller, however, Dr. Newman's opinion is not evaluated under the treating physician rule.  As noted by the ALJ, and as Plaintiff admits, Dr. Newman rendered the opinion after his first examination with Plaintiff.  (PageID.780.)  That is not sufficient to establish a treating relationship that would trigger the treating physician analysis. *See Smith v. Comm'r of Soc. Sec.*,

482 F.3d 873, 876 (6th Cir. 2007) (opinion from a doctor who examined a claimant only once and wrote a single "physical capacity evaluation" is not reviewed as the opinion of a treating physician); *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005) (opinions of a doctor who examined claimant only once was a "nontreating source" under the regulations and not assigned controlling weight under the "treating physician rule"); *Lucas v. Comm'r of Soc. Sec.*, No. 1:09-CV-920, 2010 WL 2992394, at *5 (W.D. Mich. July 6, 2010) *report and recommendation adopted*, No. 1:09-CV-920, 2010 WL 2992390 (W.D. Mich. July 27, 2010) ("A physician who sees a patient for only two or three visits "often" lacks a sufficient ongoing treatment relationship to be considered a treating physician.")

Because Dr. Newman was not a treating physician at the time he rendered the opinion, the ALJ was "not under any special obligation to defer to that opinion or to explain why he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011). Instead, the ALJ was simply required to consider the opinion and accord such weight he found appropriate. *See, e.g., Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014). The ALJ does not necessarily have to specifically identify and discuss every item of evidence in the record. Nevertheless, the ALJ must actually consider the entire record. *See, e.g., Henry v. Comm'r of Soc. Sec.*, 973 F. Supp. 2d 796, 803 (N.D. Ohio 2013). The record shows the ALJ considered Dr. Newman's opinion, and moreover explained his reasons for giving it limited weight. (PageID.51.) In this the Court finds no error.

C.    *Weighing the Medical Opinions*

As noted above, ALJs are to consider several factors in determining the weight to assign medical opinions. 20 C.F.R. § 1527. Plaintiff claims, however, that after the ALJ determined

the opinions of Dr. Miller and Dr. Newman were not entitled to controlling weight, the ALJ "did not mention or appear to apply any of the regulatory factors for determining the weight to be assigned" those opinions.  (PageID.785.)  The Court disagrees.

The record shows the ALJ "considered the opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-6p, and 06-3p."  (PageID.49.)  The ALJ is only required to "consider" the factors.  The regulation does not require a "factor-by-factor" analysis. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804–05 (6th Cir. 2011); *see also Kostovski–Talevska v. Comm'r of Soc. Sec.*, No. 5:13–cv–655, 2014 WL 2213077, at *9 (N.D. Ohio May 28, 2014) (collecting cases); *Mayfield v. Comm'r of Soc. Sec.*, No. 1:12–cv–912, 2014 WL 1341923, at * 11 (W.D. Mich. Mar. 31, 2014).  The record is sufficient to demonstrate the ALJ properly considered the requisite factors.  For example, the ALJ discussed the frequency of Plaintiff's treatment with Dr. Newman, by noting that the doctor "rarely saw claimant during the period at issue (and not before insured status expiration.)" (PageID.51.)  As indicated above, the ALJ also considered the supportability of the opinion and consistency of the opinion with the record as a whole, by noting the opinions were inconsistent with the doctors' treatment notes.

Regardless of the other factors which the regulation required the ALJ to consider—such as the nature and extent of the treatment relationship and specialization of the treating source —the evidence and opinions mentioned thus far provide substantial evidence for the ALJ's decision to accord Dr. Miller and Dr. Newman's opinions limited weight. No matter how long Dr. Miller had been treating Plaintiff or how much experience the doctors had with Plaintiff's conditions, the record supports the ALJ's findings that the doctors' opinions were inconsistent with treatment notes in the record.

12

Against this backdrop, the ALJ assigned "significant weight" to the opinion of Dr. Patricia Bush, M.D., who was a medical consultant and determined Plaintiff could perform a limited range of light work. (PageID.51, 620–26.) Plaintiff asserts the ALJ erred in giving this opinion greater weight than the opinions of Dr. Miller and Dr. Newman. (PageID.785–86.) Plaintiff is mistaken. Rather, "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.") This is such an appropriate circumstance. The ALJ concluded Dr. Miller and Dr. Newman's opinions were not well supported by the record, but Dr. Bush's opinions were. The Court finds no basis for disturbing the ALJ's decision. Plaintiff's first claim of error is accordingly rejected.

## 2.

Before the Appeals Council remanded the case, the ALJ found that Plaintiff only had the severe impairments of a L3-L5 tear and obesity. (PageID.162.) As noted above, the ALJ's decision after the remand included several additional severe impairments. Both decisions, however, contain identical RFCs. (PageID.49, 163.) Plaintiff's second claim of error alleges that this discrepancy demonstrates that the ALJ's RFC determination failed to address any limitations related to the severe impairments of cervical spine disorder, shoulder arthritis, and diabetes that were added

13

in the second decision.  (PageID.787–89.)  Whether a claimant has a "severe impairment" is determined at step two of the sequential evaluation, and defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  A claimant's RFC is determined at step four of the sequential evaluation. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  20 C.F.R. § 404.1545.  RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis.  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

Contrary to Plaintiff's assertion, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  This is because "[t]he regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms." *Id.* (citing 20 C.F.R. § 404.1545(e)); *see, e.g., West v. Colvin*, No. 5:14–69–KKC, 2014 WL 7177925 at *4 (E.D. Ky. Dec. 6, 2014) ("[t]he ALJ is not required to incorporate all 'severe impairments' in her RFC assessment"); *see also Schmiedebusch v. Comm'r of Social Sec.*, 536 F. App'x 637, 645–646 (6th Cir. 2013) (affirming an ALJ's conclusion that an additional severe impairment that reflected little increase in symptomatology since a prior decision did not support a more restrictive RFC assessment).  Here, although the ALJ provided additional severe impairments, the record does not demonstrate that Plaintiff was further limited than that found by

the ALJ in his initial decision.  As shown, the mere fact that a Plaintiff may be found to have additional severe impairments does not mandate a more restrictive RFC.

Plaintiff further contends the RFC determination is unsupported by substantial evidence.  This is so, Plaintiff argues, for two separate reasons.  First, Plaintiff claims the ALJ failed to specifically cite to the supporting record evidence when setting forth his conclusions regarding Plaintiff's RFC.  After reviewing the entire decision, the Court disagrees with Plaintiff.  While the ALJ did not cite specific record evidence in that portion of his decision that specifically addressed the RFC, the ALJ did cite extensively to record evidence in an earlier section of his decision.  When viewed, as a whole, it is easily seen that the ALJ's RFC analysis refers back to the record evidence previously discussed in the ALJ's decision and is sufficient to demonstrate to a reviewing court what evidence he relied on in making his determination. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (finding that it would be a "needless formality" for an ALJ to repeat "substantially similar factual analyses" at separate steps of the sequential analysis).  The ALJ set forth a summary of the evidence, and then explained how that evidence–including CT, MRI, and other evaluations–did not reveal disabling results.  (PageID.50.)  The ALJ's decision must say enough "to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  The Court is able to do so here.

Plaintiff secondly argues the RFC is unsupported by substantial evidence, citing to evidence that he claims supports a contrary conclusion.  The fact that there may be evidence that supports a contrary conclusion, however, does not mean that the ALJ's decision is unsupported by other substantial evidence. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) ("If the Commissioner's decision is supported by substantial evidence, we must defer to that decision, 'even

15

if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).   Indeed, "the Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).   Given this deferential standard, substantial evidence supports the ALJ's RFC determination.

Plaintiff generally alleged no limitations from his diabetes.  In a treatment note regarding Plaintiff's diabetes, Plaintiff denied polyuria, polyphagia, polydipsia, change in vision, foot ulcerations, or hypoglycemic episodes.  (PageID.527.)   While Dr. Bush noted Plaintiff complained of paresthesias in his hands and feet that was consistent with diabetic neuropathy, she still found Plaintiff was capable of light work.  (PageID.625.)  Regarding Plaintiff's cervical spine, the ALJ noted a February 15, 2011, x-ray that revealed only minor degenerative changes. (PageID.617.)  Plaintiff also consistently presented with a normal gait.  (PageID.509.)  In April and May of 2010, the nurse practitioner found that Plaintiff did not complain of any "muscle or joint pain, weakness, swelling or inflammation."  She found "no restriction of motion, no atrophy or backache."  (PageID.524, 528.)  Finally, Dr. Newman found Plaintiff's shoulders had "subacromial spurring and narrowing of the subacromial space," but found "no significant osseous or articular abnormality, fracture, dislocation, or significant degenerative changes."  The "associated joint spaces and visualized portions of the soft tissues [were] unremarkable." (PageID.593.)  The ALJ clearly articulated how the evidence supported his conclusion that Plaintiff could perform a reduced

range of light work, and the Court finds his conclusions supported by substantial evidence. (PageID.49–51.) Plaintiff's second claim of error is therefore rejected.

**3.**

At the administrative hearing, Plaintiff testified that he was impaired to an extent far greater than that recognized by the ALJ. For example, Plaintiff stated that twelve times a day he needed to lie on the couch, with a heating pad and his legs elevated on pillows, for at least twenty minutes before he could resume activities. (PageID.119.) Plaintiff further testified that his medications caused him to be forgetful, and that they caused upset stomach, irritable bowel syndrome, dizziness, and nausea. (PageID.114, 118.) On Plaintiff's function report, Plaintiff testified he could only walk three hundred feet because of his low back pain. (PageID.360.) Plaintiff claims the ALJ failed to properly consider his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also, Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also, Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.*; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony" (internal quotation marks omitted)).  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).  In fact, as the Sixth Circuit stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ's reasons for discounting Plaintiff's subjective allegations are well supported.  For example, the ALJ referred to objective testing results that demonstrated Plaintiff had a normal gait and only minor degenerative changes to his cervical and lumbar spine. (PageID.617.)

18

The ALJ also correctly noted that Plaintiff regularly did not complain of symptoms corresponding to his alleged medication side effects. On his function report, Plaintiff stated he could pay attention for two hours, and did not need reminders in taking care of his personal needs nor in taking medication. (PageID.357, 360.) On multiple occasions, Plaintiff did not complain of dizziness, nausea or diarrhea–the principal side effects he alleged at the hearing. (PageID.475, 503, 508, 512, 516, 519.) Notably, Plaintiff does not cite to any evidence, other than his testimony regarding weight loss from 300 to 270 pounds, regarding medication side effects. At the hearing, however, Plaintiff did not connect the weight loss to any side effects, and was in fact commended for having lost the weight. (PageID.74–75, 791.) The ALJ also noted his testimony was undercut by his activities of daily living. Plaintiff stated on his function report that he could drive a car and go out alone, as well as go shopping for an hour. (PageID.358.) Plaintiff argues that these activities are consistent with his testimony. While that seems doubtful considering Plaintiff's testimony that he needed to lie down a dozen times a day, even if Plaintiff is correct, the above reasons are more than enough to find substantial evidence supporting the ALJ's decision. The ALJ finally noted Plaintiff collected unemployment benefits. The record shows that Plaintiff collected a small amount of benefits before his date last insured in 2010, although Plaintiff testified at the first hearing that he did not collect any funds during 2010, and that those funds may have been returned. (PageID.66, 314–15.) It is appropriate for an ALJ to draw an adverse inference regarding credibility from a claimant's application for and receipt of unemployment benefits during the period the claimant claims to have been disabled. *See Workman*, 105 F. App'x at 801 (6th Cir. 2004). In this case, even if Plaintiff did not receive benefits before his date last insured, the Court has already found

19

substantial evidence supporting the ALJ's credibility decision.  Accordingly, Plaintiff's claim is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated:  April 22, 2016                    /s/ Janet T. Neff
                                          JANET T. NEFF
                                          United States District Judge